AO 91 (REV.5/85) Criminal Complaint

AUSA Rick Young (312) 886-7660

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

**FILED**

AUG 2 8 2013
8-28-13

THOMAS G BRUTON
CLERK, U S DISTRICT COURT

UNITED STATES OF AMERICA

v.

CORNELIS JAN SLOMP

**CRIMINAL COMPLAINT**

MAGISTRATE JUDGE ROWLAND

CASE NUMBER:

**13 CR 689**

I, the undersigned complainant, being duly sworn on oath, state that the following is true and correct to the best of my knowledge and belief:  On or about April 11, 2012, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere, CORNELIS JAN SLOMP defendant herein:

> did knowingly and intentionally import and attempt to import into the United States from a place outside the United States a controlled substance, namely, a quantity of 3-4 Methylenedioxymethamphetamine ("MDMA"), a Schedule I Controlled Substance;

in violation of Title 21, United States Code, Sections 952(a) and 960(a)(1).  I further state that I am a Special Agent with Immigration & Customs Enforcement, and that this complaint is based on the facts contained in the Affidavit which is attached hereto and incorporated herein.

_____
Signature of Complainant
SIXTO LUCIANO
Special Agent, Immigration & Customs Enforcement

Sworn to before me and subscribed in my presence,

August 28, 2013                                    at    Chicago, Illinois
Date                                                          City and State

MARY M. ROWLAND, U.S. Magistrate Judge
Name & Title of Judicial Officer

_____
Signature of Judicial Officer

UNITED STATES DISTRICT COURT )
                                  )     SS

NORTHERN DISTRICT OF ILLINOIS )

        I, Special Agent Sixto Luciano, of the United States Immigration and Customs Enforcement ,

being duly sworn under oath, do hereby depose and state:

1.      I am employed as a Special Agent with U.S. Department of Homeland Security, Immigration

and Customs Enforcement, Homeland Security Investigations and have been employed in this

capacity since 2008.  My responsibilities include the investigation of possible criminal

violations of federal laws, including violations of narcotic and cyber-related laws.  Prior to my

employment with HSI, I was employed as a Postal Inspector with the U.S. Postal Inspection

Service from April 2008 through August 2008, and as a Special Agent with the Internal

Revenue Service, Criminal Investigation from January 2001 through April of 2008.  In my

capacity as criminal investigator with these agencies, I have personally conducted or assisted in

conducting investigations of a variety of offenses.

## STATEMENT OF FACTS & PROBABLE CAUSE

2.      I make this affidavit in support of a criminal complaint against CORNELIS JAN SLOMP for

knowingly and intentionally importing and attempting to import a controlled substance into the

United States, namely, a quantity of 3-4 Methylenedioxymethamphetamine, also known as

MDMA or ecstasy, in violation of Title 21, United States Code, Sections 952(a) and 960(a)(1).

3.      This affidavit is based upon my personal knowledge, my review of documents and other

evidence, and my conversations with other law enforcement officers.  Because this affidavit is

being submitted for the limited purpose of establishing probable cause, it does not include all

the facts that I have learned during the course of the investigation.  Where the contents of the

documents and the actions, statements, and conversations of others are reported herein, they are

reported in substance and in part, except where otherwise indicated.

4.    This application stems from an ongoing investigation into an underground website used to sell illegal drugs. Based on my experience and training, and my consultation with other agents who have participated in this investigation, this website provides an infrastructure similar to well-known online marketplaces such as Amazon Marketplace or eBay, allowing vendors and buyers to conduct transactions online. However, unlike such legitimate websites, this website is designed to facilitate illegal commerce by ensuring anonymity on the part of both buyers and vendors.

5.    The primary means by which the website protects the anonymity of its users is by operating on a special worldwide network of computers that conceals the true Internet Protocol addresses of the user of the network.[1] Every communication sent through this network is bounced through numerous relays within the network, and wrapped in a layer of encryption at each relay, such that the end recipient of the communication has no way of tracing the communication back to its true originating IP address. In a similar fashion, the network also enables websites to operate on the network in a manner that conceals the true IP address of the computer server hosting the website.

6.    During the course of HSI's investigation into the website, agents have entered the website in an undercover capacity and observed a vendor who utilizes a specific name, which I will refer to here as "Vendor A." Agents have observed this vendor as active on the underground website for about 17 months offering for sale various controlled substances such as cocaine, heroin, MDMA crystals, LSD and ecstasy pills.

7.    The profile page on the underground website for Vendor A indicates that he sells large

---

[1] Every computer attached to the Internet is assigned a unique numerical identifier known as an Internet protocol of "IP" address. A computer's IP address can be used to determine its physical location and, in turn, to identify the user of the computer.

quantities of controlled substances in pure form. Specifically, the profile page states, "You will always get pure product, no Coke/MDMA/Heroin in powdered form!" and "Big stockpiles of product, you literally cannot empty me out."

8.    Based on my training and experience, and my discussions with other agents, the quantities of controlled substances that agents have observed being offered by Vendor A are distribution amounts. The profile page for Vendor A further states that "I am mainly a provider to dealers, sellers or . . . resellers."

9.    The profile page on the website for Vendor A also indicates that he ships controlled substances to the United States. Specifically, the profile page states the following with respect to shipping: "Shipping times estimated business days: Europe 3-7, Germany 1-3, Canada 5-8, Asia 4-7, South-America 6-14, Middle-East 6-14, USA 7-14."

10.    Agents have also observed distinctive markings on some of the controlled substances offered for sale by Vendor A on the website. In particular, agents observed Vendor A offering for sale cocaine, heroin, MDMA and ecstasy pills with "question mark" logo stamps and "white speaker" stamps.

11.    On April 11, 2012, Customs and Border Protection officers at Chicago O'Hare International Mail Branch discovered and seized an envelope that was mailed from the Netherlands, which contained a crystal-like substance that field tested positive for MDMA. The MDMA was concealed inside an empty DVD case.

12.    Over the course of this investigation, agents have observed and collected over 100 envelopes in Chicago containing Schedule I and II narcotics that resemble the same packaging characteristics of the envelope containing MDMA seized in April 2012. These characteristics include similarities in the shipping labels, envelope style, and packaging material found inside.

The seized envelopes have also contained similar drugs, such as similar style ecstasy pills (with question mark stamps) offered by Vendor A. These packages were all mailed from the Netherlands or Germany, which is where Vendor A stated that he ships his controlled substances from on the profile page on the website.

13. The envelope seized in April 2012 and its packaging contents were forwarded to the ICE Forensic Laboratory for a fingerprint analysis. The ICE Forensic Lab discovered several classifiable prints on the DVD case found in the interior of the envelope.

14. Through a Mutual Legal Assistant Treaty with The Netherlands Government, the fingerprints found on the DVD case were cross-referenced through criminal database records for matches. According to the Netherlands Police, one of the prints found on the DVD case was matched to a criminal record for CORNELIS JAN SLOMP.

15. A review of databases available to agents revealed that SLOMP was scheduled to board a flight from Dusseldorf, Germany on August 27, 2013 to Miami, Florida, with a reservation to stay in the United States until November 7, 2013. Agents observed on August 26, 2013, that Vendor A posted a message to his public profile on the website that stated, "READ: TEMPORARILY VACATION MODE DUE TO RELOCATING PART OF THE OPERATION ACROSS CONTINENTS! VACATION MODE DISABLED WITHIN A WEEK!"

16. On August 27, 2013, SLOMP arrived at the Miami International Airport. His passport reflected that he is a citizen of the Netherlands. Upon entry to the United States, SLOMP told Customs and Border Patrol officers that he was coming for business, and was going to attempt to acquire a visa to authorize him to legally work in the U.S. SLOMP did not declare on his Customs Declaration that he was carrying over $10,000. When asked by CBP officers if he was carrying over $10,000, SLOMP declared that he had approximately $15,000. SLOMP

amended his declaration to state that he had no more than $19,000. Upon conducting a verification of SLOMP's currency, CBP officers confirmed that he was carrying over $20,000.

17.     CBP officers also observed that SLOMP was entering the U.S. carrying only a back pack and had no luggage or packed clothing. SLOMP stated that he was going to be purchasing all the clothing he would need, and had rented a Lamborghini for his duration of stay. CBP officers discovered a Macbook laptop, iPad and iPhone in SLOMP's possession.

18.     While conducting a border search of SLOMP's Macbook computer, several Excel files were observed that contained categories that included "screen names," "product," "reship," and "refund," with information consistent with usernames previously observed by agents on the website. The products listed in these categories corresponded to descriptions used by Vendor A on the website to describe controlled substances, such as "Green ? 120mg," "Red ? 180mg," "White Speakers/Tri Force," "Coke," and "mdma."

19.     During the border search of SLOMP's computer, agents also observed that the computer's docking station contained an icon that would allow the user to access the computer network described above. SLOMP had also downloaded and installed a program that agents recognize as one that is commonly used by buyers and vendors on the website to communicate with one another in a more real-time setting.

20.     Agents interviewed SLOMP at Miami International Airport on August 27, 2013. During this interview, he admitted to being Vendor A for at least the last 15 months and coming to the United States for the purpose of continuing his business operations. SLOMP also stated during the interview that he is the only person who has access to and has used his Macbook laptop.

## **CONCLUSION**

21.     Based on the information contained in this affidavit there is probable cause to believe that

SLOMP knowingly and intentionally imported and attempted to import a controlled substance

into the United States, namely, a quantity of MDMA, in violation of Title 21, United States

Code, Sections 952 and 960(a)(1).

Sixto Luciano, Special Agent
Homeland Security Investigations


SUBSCRIBED AND SWORN to before me on August 28, 2013

MARY M. ROWLAND
United States Magistrate Judge